UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

MELINDA J. REICHERT,              )
                                  )
        Plaintiff,                )
                                  )
    v.                            )          No. 2:22 CV 93 RWS
                                  )
KILOLO KIJAKAZI,                  )
Commissioner of Social Security,  )
                                  )
        Defendant.                )

## MEMORANDUM AND ORDER

Plaintiff Melinda J. Reichert brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act.  For the reasons discussed below, the Commissioner's decision will be affirmed.

## Background

Reichert filed a Title II application for a period of disability and disability insurance benefits on June 25, 2020.  (Tr. 207).  Reichert alleged that she became disabled on April 13, 2019, due to injuries from a motorcycle accident, including a broken shoulder, a broken nose, multiple skull and facial fractures, bruising, problems with her left knee and hip, and a broken back.  (Tr. 224 & 235).

Reichert's application was denied at the initial claims level.  (Tr. 114).  Reichert then filed a request for reconsideration.  (Tr. 132).  Upon reconsideration,

Reichert's application was once again denied.  (Tr. 133).  Reichert then filed a request for a hearing before an administrative law judge ("ALJ").  (Tr. 139).  A hearing was held on September 27, 2021.  (Tr. 34).  On November 24, 2021, the ALJ issued a decision denying Reichert benefits, finding that she was not under a disability at any point from April 13, 2019, through the date of the decision.  (Tr. 28).  Reichert appealed the ALJ's decision, but the Appeals Council denied her request for review.  (Tr. 1).  As a result, the ALJ's decision became the final decision of the Commissioner.  See 42 U.S.C. § 405(g).

Reichert filed this action on December 20, 2022, seeking judicial review of the Commissioner's final decision.  Reichert argues that the Commissioner's decision should be reversed because the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence.  Reichert requests that I reverse the Commissioner's decision and remand this case for further proceedings.

## Legal Standard

To be eligible for disability benefits under the Social Security Act, a claimant must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months.  42 U.S.C. § 423(d)(1)(A).  A claimant will

2

be declared disabled only if her impairment or combination of impairments is of such severity that she is unable to engage in her previous work and—considering her age, education, and work experience—she is unable to engage in any other kind of substantial gainful work in the national economy.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the RFC to perform her past relevant work; and (5) whether the claimant has the RFC to perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520. The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  Id. Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision.  Id.  I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to

3

draw two inconsistent positions, and the Commissioner has adopted one of those positions." Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## **ALJ Decision**

The ALJ denied Reichert disability benefits after finding that she was not under a disability at any point from April 13, 2019, the date of her alleged onset of disability, through November 24, 2021, the date of the decision. (Tr. 28). At step one, the ALJ found that Reichert had not engaged in substantial gainful activity since April 13, 2019. (Tr. 15). At step two, the ALJ found that Reichert had the following severe impairments: obesity; fracture of T5 and T6; fracture and soft tissue injury to the left shoulder; myofascial pain syndrome; mild neurocognitive disorder; and adjustment disorder. (Id.) At step three, the ALJ found that Reichert did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Id.)

At step four, the ALJ found that Reichert had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) but with several limitations. (Tr. 18). Based on this RFC, the ALJ found that Reichert was unable to perform any of her past relevant work. (Tr. 26). However, at step five, the ALJ found that Reichert was capable of performing other jobs that existed in significant numbers in the national

4

economy. (Tr. 27). A vocational expert identified the following jobs within Reichert's RFC as existing in significant numbers in the national economy: dining attendant (430,000 positions); housekeeper (900,000 positions); and retail clerk (4,000,000 positions). (Id.) Because Reichert was capable of performing other jobs that existed in significant numbers in the national economy, the ALJ concluded that she was not under a disability at any point during the relevant period. (Tr. 28).

## **Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Reichert's recitation of facts, (Doc. 8-1), because they are not contested by the Commissioner, (Doc. 9-1). Additional facts will be discussed as necessary.

## **Discussion**

Reichert argues that the Commissioner's decision should be reversed because the ALJ's RFC determination is not supported by substantial evidence. A claimant's RFC is the most the claimant can do despite her limitations, and an ALJ must assess it based on all relevant evidence in the claimant's case record. 20 C.F.R. § 404.1545(a)(1). Relevant evidence includes "'medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013)). Because a claimant's RFC is a medical question, an ALJ's RFC determination "'must be supported by some

medical evidence of the claimant's ability to function in the workplace.'"   Id.
(quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)).

In this case, the ALJ found that Reichert had the RFC to perform light work
as defined in 20 C.F.R. § 404.1567(b) but with several limitations.  (Tr. 18).  The
ALJ assessed the following limitations:

> The claimant could never climb ladders, ropes, or scaffolds and
> frequently climb ramps and stairs.  The claimant could occasionally
> kneel and crawl and frequently balance, stoop, or crouch.  She could
> occasionally reach overhead with the left upper extremity.  She can
> maintain the attention required to perform simple, routine tasks, and
> make simple work-related decisions.  She can perform work that is not
> at a fast pace such as on an assembly line but can stay on task and meet
> reasonable production requirements in an environment that allows a
> flexible and goal-oriented pace.  The claimant can have occasional
> interaction with coworkers, after an initial training period, occasional
> interaction with supervisors.

(Id.)   Reichert argues that the ALJ's RFC determination is not supported by
substantial evidence because there is no opinion evidence from a treating or
examining physician that she was capable of performing light work; the ALJ
improperly relied on prior administrative medical findings of the state agency's
consultants; the ALJ improperly relied on inferences from medical records; the ALJ
improperly discounted her subjective complaints; the ALJ misunderstood,
misrepresented, or ignored certain medical records; and she would miss too much
work to sustain competitive employment.

6

### A.     Opinion Evidence

The ALJ did not err in formulating Reichert's RFC merely because there was no opinion evidence from a treating or examining physician that Reichert was capable of performing light work.  Treating and examining physicians are not entitled to special deference under the current regulations, and there is no requirement that an ALJ's RFC determination be supported by a specific medical opinion.  See 20 C.F.R. § 404.1520c(a) (stating the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"); Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) ("Under the current regulations, … treating physicians are not entitled to special deference."); Hensley, 829 F.3d at 932 ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.").  An ALJ's RFC determination need only be supported by substantial evidence in the record as a whole and some medical evidence.  Hensley, 829 F.3d at 932; Pate-Fires, 564 F.3d at 942.  As discussed below, the ALJ's RFC determination is supported by substantial evidence in the record as a whole and some medical evidence.

### B.     Prior Administrative Medical Findings

The ALJ did not err in relying in part on prior administrative medical findings of the state agency's consultants.  A prior administrative medical finding is a finding, other than the ultimate determination of whether a claimant is disabled, about a

medical issue made by an agency's medical or psychological consultant at a prior level of review based on his or her review of the evidence in the claimant's case record.  20 C.F.R. § 404.1513(a)(5).  While an ALJ is not required to adopt any prior administrative medical findings, such evidence must be considered because the agencies' medical and psychological consultants are "highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1).

For claims filed after March 27, 2017, like Reichert's, an ALJ must not "defer or give any specific evidentiary weight … to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of such evidence based on several factors: supportability; consistency; the medical source's relationship to the claimant; the medical source's specialization; and other factors.  20 C.F.R. § 404.1520c(c).  The most important factors are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  An ALJ must articulate how persuasive she found all medical opinions and prior administrative medical findings in a claimant's case record.  20 C.F.R. § 404.1520c(b).  An ALJ must also explain how she considered the supportability and consistency factors.  20 C.F.R. § 404.1520c(b)(2).

Reichert takes issue with the ALJ's reliance on the prior administrative medical findings of two consultants: Michael O'Day, D.O., and Renu Debroy, M.D. Dr. O'Day reviewed the evidence in Reichert's case record on July 16, 2020.  (Tr.

84).  Dr. O'Day found that Reichert could occasionally lift, carry, push, or pull 20 pounds; frequently lift, carry, push, or pull 10 pounds; stand or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance or stoop; and occasionally kneel, crouch, or crawl.  (Tr. 81).  Dr. O'Day also found that Reichert was limited in reaching overhead on her left side.  (Tr. 82).  Dr. Debroy reviewed the evidence in Reichert's case record on November 30, 2020.  (Tr. 105).  Dr. Debroy found that Reichert could occasionally lift, carry, push, or pull 20 pounds; frequently lift, carry, push, or pull 10 pounds; stand or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, or crawl.  (Tr. 100–01).  Dr. Debroy also found that Reichert was limited in reaching overhead on her left side.  (Tr. 102).

Consistent with the relevant regulations, the ALJ stated in her decision that she found these prior administrative medical findings generally persuasive.  (Tr. 24–25).  With respect to supportability, the ALJ noted that the findings were supported by a detailed analysis of the evidence from Reichert's motorcycle accident on April 13, 2019, through the most recent evidence in Reichert's case record.  (Tr. 25); see also (Tr. 82–84, 102–05).  With respect to consistency, the ALJ found that the evidence in Reichert's case record was more consistent with greater limitations, so

9

she assessed limitations for never climbing ladders, ropes, or scaffolds and only occasionally reaching overhead with her left upper extremity.  (Tr. 25).  Because the ALJ articulated how persuasive she found the prior administrative medical findings of Dr. O'Day and Dr. Debroy and discussed the supportability and consistency of those findings, she complied with the relevant legal requirements, and her reasonable reliance on the findings was "within the zone of choice."  Morton v. Saul, No. 2:09-CV-92-RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021); see also Bowers, 40 F.4th at 875 (rejecting claimant's argument that the ALJ erred in relying on the prior administrative medical findings of the state agency's consultants).

### C.   Inferences from Medical Records

The ALJ did not improperly rely on her own inferences from medical records in formulating Reichert's RFC.  An ALJ "may not draw upon [her] own inferences from medical reports" in formulating a claimant's RFC.  Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).  But that was not done in this case.  As discussed above, in formulating Reichert's RFC, the ALJ relied in part on the prior administrative medical findings of Dr. O'Day and Dr. Debroy.  (Tr. 24–25).  The ALJ also relied on the prior administrative medical findings of James Morgan, P.D.   (Tr. 24).  Therefore, contrary to Reichert's suggestion, the ALJ did not improperly rely on inferences from medical records in formulating her RFC.  To the extent Reichert argues that the ALJ improperly relied on inferences from medical records because

her RFC determination was not supported by a specific medical opinion, I reiterate that "there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley, 829 F.3d at 932; see also Cox, 495 F.3d at 619 ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.").

### D.    Subjective Complaints

I find that the ALJ did not improperly discount Reichert's subjective complaints. When evaluating evidence of pain or other symptoms, an ALJ is never free to ignore a claimant's subjective complaints. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). An ALJ may discount a claimant's subjective complaints, however, if "they are inconsistent with the evidence as a whole." Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015). In discounting a claimant's subjective complaints, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012).

The relevant factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the

claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints.  Id. at 1065–66; see also 20 C.F.R. § 404.1529(c).  While an ALJ must consider these factors, she need not discuss how each factor supports her determination.  Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007).  If an ALJ "explicitly discredits" a claimant's complaints and "gives a good reason for doing so," a court should defer to her determination.  Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

In this case, the ALJ determined that Reichert's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects" of her symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (Tr. 19).  Although the ALJ did not discuss every relevant factor in making this determination, she identified the relevant factors and stated that she considered all of Reichert's symptoms based on the requirements of 20 C.F.R. § 404.1529 and Social Security Rule 16-3p, (Tr. 18), and it is clear that she considered several factors and used numerous facts in evaluating Reichert's complaints.

For instance, the ALJ considered Reichert's improvement with treatment after the date of her alleged onset of disability.  (Tr. 20 & 25); see also 20 C.F.R. § 404.1529(c)(3)(v) (stating treatment for relief or other symptoms may be considered when evaluating the intensity and persistence of a claimant's symptoms); Johnson

v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (internal quotation marks omitted) (stating "impairments that are controllable or amendable to treatment do not support a finding of total disability").  The ALJ's determination that Reichert's impairments improved with treatment is supported by substantial evidence.  See, e.g., (Tr. 414–15, 419, 470, 475, 645, 647, 1016, 1076–77, 1119–20).

The ALJ also considered inconsistencies between Reichert's subjective complaints and her reported daily activities.  (Tr. 25); see also McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (noting claimant's ability to "perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with … an electric cart"); Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2010) (stating "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain").  The ALJ's determination that Reichert's reported daily activities were inconsistent with her subjective complaints is supported by substantial evidence.  See, e.g., (Tr. 251–52, 273–75, 886, 1272).

The ALJ also considered the lack of objective medical evidence supporting Reichert's subjective complaints.  (Tr. 25); see also 20 C.F.R. § 404.1529(c)(2) (stating objective medical evidence is useful in making reasonable conclusions about the intensity and persistence of a claimant's symptoms); Halverson v. Astrue, 600 F.3d 922, 931–32 (8th Cir. 2010) (stating an ALJ may not discount a claimant's

subjective complaints "solely because they are unsupported by objective medical evidence" but may consider "the absence of objective medical evidence to support the complaints"). The ALJ's determination that the objective medical evidence did not support Reichert's subjective complaints is supported by substantial evidence. See, e.g., (Tr. 473, 482, 492, 500–01, 515–36, 556–71, 919–26, 951, 1017, 1215).

In light of these considerations and supporting facts, I find that the ALJ did not improperly discount Reichert's subjective complaints. The ALJ explicitly found that Reichert's complaints were not entirely consistent with the medical and other evidence in the record, she identified good reasons for discounting the complaints, and her determination is supported by substantial evidence in the record as a whole. I will therefore defer to the ALJ's determination. See Renstrom, 680 F.3d at 1067 ("Because the ALJ gave good reasons for discounting [claimant's] credibility, we defer to the ALJ's credibility findings."); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").[1]

---

[1] In addition to the considerations discussed above, the ALJ also considered Reichert's declination of referrals to diet and exercise programs and lack of adherence to suggestions for weight loss. Reichert argues that the ALJ improperly concluded that she refused to diet or exercise and that such an error affected the ALJ's evaluation of her subjective complaints. This alleged error does not, however, alter my conclusion that the ALJ did not improperly discount Reichert's subjective complaints because the ALJ identified other good reasons for discounting the complaints, and her determination is supported by substantial evidence in the record as a whole.

### E.    Medical Records

There is nothing in the record indicating that the ALJ misunderstood, misrepresented, or ignored medical records.

Reichert argues that the ALJ ignored medical evidence of her left knee pain. In support of this argument, Reichert points to her visit with Mary Decker, N.P., on July 19, 2019.  During that visit, Nurse Decker evaluated Reichert's left knee and found that she was experiencing tenderness in the medial joint line.  (Tr. 499).  Nurse Decker also noted that, among other things, Reichert was not displaying any significant joint effusion; Reichert was able to perform a straight leg raise without difficulty; Reichert was displaying crepitus to the patellofemoral compartment with range of motion; Reichert's range of motion was limited due to her guarding; and Reichert's tenderness palpation was out of proportion to the exam technique.  (Tr. 500).  In addition, Nurse Decker noted that magnetic resonance imaging (MRI) showed some joint effusion and a high-grade strain of the posterior cruciate ligament (PCL) without a distinct tear but that the anterior cruciate ligament (ACL), medial collateral ligament (MCL), lateral collateral ligament (LCL), and meniscus were all intact.  (Id.)  Nurse Decker also noted that MRI showed only limited arthritic changes.  (Tr. 501).  Although the ALJ did not find that Reichert had a severe impairment related to her left knee, the ALJ did find that the strain of her PCL was a non-severe impairment, and the ALJ considered the strain of her PCL in

15

formulating her RFC.  (Tr. 15).  The ALJ also specifically discussed Reichert's visit with Nurse Decker on July 19, 2019.  (Tr. 20–21).

Reichert also argues that the ALJ ignored her diagnosis of adhesive capsulitis of the left shoulder.  Reichert was diagnosed with adhesive capsulitis after her motorcycle accident on April 13, 2019.  (Tr. 498).  On June 18, 2019, Nurse Decker recommended that Reichert receive a glenohumeral joint injection to treat her chronic shoulder discomfort and adhesive capsulitis.  (Id.)  Nurse Decker also recommended that Reichert participate in aggressive physical therapy.  (Id.)  On July 19, 2019, Reichert reported that her physical therapy was going well but that she did not notice any relief from the injection.  (Id.)  Reichert later underwent an arthroscopy with arthroscopic lysis of adhesions with manipulation and an arthroscopy with arthroscopic subacromial decompression with anterior acromioplasty on November 19, 2019.  (Tr. 405).  Reichert participated in physical therapy over the course of the next several months.  On May 6, 2020, Reichert was seen by Adam Derhake, M.D., who observed that she was continuing to demonstrate slow but steady improvements in the range of motion and overall function of her left shoulder.  (Tr. 471).  On June 17, 2020, Reichert reported that she was becoming increasingly happy with the results of her surgery.  (Tr. 470).  In formulating Reichert's RFC, the ALJ discussed her adhesive capsulitis and noted that she

received an injection, participated in physical therapy, underwent surgery, and ultimately showed improvement.  (Tr. 20–22).

Reichert argues further that the ALJ misunderstood her diagnosis of myofascial pain syndrome.  In support of this argument, Reichert notes that her myofascial pain syndrome affected the muscles in her neck and shoulders and had nothing to do with broken bones.[2]  On September 21, 2020, Reichert was seen by Jordan Hogan, N.P., due to complaints of pain in her hip and back.  (Tr. 950).  Nurse Hogan evaluated Reichert and found that several muscles in her upper back, shoulders, and neck produced significant myofascial pain syndrome and that Reichert was restricted in her range of motion.  (Tr. 951–52).  Nurse Hogan also noted that these findings supported recent MRI, though the recent MRI appeared to be fairly mild.  (Tr. 952).  On January 4, 2021, Reichert was seen again by Nurse Hogan due to complaints of pain in her hip and back.  (Tr. 1016).  Nurse Hogan's assessment on January 4, 2021, was largely the same as it was on September 21, 2020.  (Tr. 1018).  In formulating Reichert's RFC, the ALJ discussed her myofascial

---

[2] Reichert argues that her myofascial pain syndrome was first noted by George Crickard, M.D., when he reviewed X-rays and MRI in December 2019.  However, it does not appear that the medical records from Reichert's visit with Dr. Crickard support this.  On December 12, 2019, Reichert was seen by Dr. Crickard due to complaints of hip osteoarthritis.  (Tr. 480–81).  Dr. Crickard reviewed X-rays and MRI from earlier in the year, and he noted that the X-rays showed only mild narrowing of the space in Reichert's left hip joint and that the MRI was essentially negative with signs of only mild osteoarthritis.  (Tr. 482).  Although Dr. Crickard stated that he thought that Reichert's hip pain was "more muscular in nature," he did not note or discuss her myofascial pain syndrome or her pain in the muscles in her neck and shoulders.

pain syndrome, including her visits with Nurse Hogan. (Tr. 22–23). The ALJ also noted that Reichert received trigger point injections on December 3, 2020, and that she experienced a 60 percent improvement by January 4, 2021. (Tr. 22, 1000, 1016). While Reichert claims that the ALJ misunderstood her myofascial pain syndrome, there is nothing in the record indicating such a misunderstanding.

Lastly, Reichert argues that the ALJ ignored medical records indicating that she should avoid excessive bending, lifting, and twisting. Reichert notes that she was advised to limit her bending, lifting, and twisting on more than one occasion after her motorcycle accident on April 13, 2019. The ALJ's RFC determination did, however, include limitations for bending, lifting, and twisting. With respect to lifting, the ALJ limited Reichert's RFC to light work. (Tr. 18). Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). With respect to bending and twisting, the ALJ assessed additional limitations for only occasionally kneeling or crawling; frequently balancing, stooping, or crouching; and only occasionally reaching overhead with the left upper extremity. (Tr. 18). Reichert acknowledges these additional limitations but takes issue with the ALJ's assessment that she could "frequently" balance, stoop, or crouch. However, even if it were an error for the ALJ to assess that Reichert could frequently engage in those activities—which I do not find—the error would be harmless because the jobs identified by the vocational

expert do not involve frequently balancing, stooping, or crouching.  See Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) (internal quotation marks omitted) ("An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred."); Dictionary of Occupational Titles (DOT), 311.677-010, 1991 WL 672694 (occupation of dining attendant does not involve balancing, kneeling, crouching, or crawling and involves only occasionally stooping); DOT, 323.687-014, 1991 WL 672783 (occupation of housekeeper does not involve balancing or crawling and involves only occasionally stooping, kneeling, and crouching); DOT, 299.677-010, 1991 WL 672643 (occupation of retail clerk does not involve balancing, kneeling, crouching, or crawling and involves only occasionally stooping).

Based on my review, there is nothing in the record indicating that the ALJ misunderstood, misrepresented, or ignored medical records.  Reichert's objection to the ALJ's evaluation of the medical records amounts to a mere disagreement with how the medical records were assessed.  But it is not my role to reweigh evidence considered by an ALJ.  See Hensley, 829 F.3d at 934.

### F.    Absences from Work

Reichert argues briefly that she would have missed too much work to sustain competitive employment.  In support of this argument, Reichert notes that she saw a medical provider every month during the relevant period and that she typically saw

a medical provider 2 or 3 times per month and as often as 8 times per month when she was participating in physical therapy.  Reichert also notes that the vocational expert testified that an employer would generally allow no more than 1 absence per month and not every month consecutively.  (Tr. 72).

As the Commissioner points out, many courts in the Eighth Circuit have "rejected similar arguments that medical treatment would result in unreasonable absenteeism and tardiness." David L. v. Kijakazi, No. 4:21 CV 125 JMB, 2022 WL 1316363, at *13 (E.D. Mo. May 3, 2022) (citing Greenwade v. Saul, No. C18-119-LTS, 2020 WL 1318793, at *6 (N.D. Iowa Mar. 20, 2022) (collecting cases)).  This is because "medical appointments do not necessarily have to be scheduled during work hours or require the claimant to miss an entire day of work." Greenwade, 2020 WL 1318793, at *6 (collecting cases); see also Brock v. Astrue, No. 4:07-CV-00632-NKL, 2008 WL 4104551, at *16 (W.D. Mo. Aug. 28, 2008) ("[T]he fact that a claimant must attend regular healthcare appointments does not necessarily indicate that she cannot work; there is nothing in the record to indicate that [claimant] could not schedule her appointments around her work schedule.").  I agree with reasoning of these courts and find nothing in the record indicating that Reichert was unable to sustain competitive employment because of her medical appointments.

## Conclusion

"A claimant bears the burden of establishing [her] RFC." Swink v. Saul, 931 F.3d 765, 770 (8th Cir. 2019). While Reichert may believe that the evidence in her case record should have been assessed differently, it is not my role to reweigh evidence considered by an ALJ. See Hensley, 829 F.3d at 934. The ALJ's decision demonstrates that she evaluated all of the medical and other evidence in Reichert's case record and adequately explained her reasons for the weight given to the evidence. Because the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner will be **AFFIRMED**, and the complaint of Plaintiff Melinda J. Reichert will be **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July 2023.

21